By the Court.
This cause was first argued at the Spring term 1804 ; and by the direction of the court, it was re-argued at the spring term 1805, and also decided ; and on a motion of the appellee then made, it has again been re-argued, or re-heard, at the present term. After the fullest investigation, the court cannot discover that the decree it has pronounced is erroneous, nor the opinion by which it was accompanied. The decision is founded on a principle which had been long settled and Very frequently applied in adjudicating on claims to land. This .principle is still conceived to be of suc-h extensive *73 importance, that the court thinks proper again to repeat it and explain it. The principle alluded to, is, that an entry for land cannot be supported, unless it calls for some object which was notorious or became notorious before the conflicting entry Was made,* or which is so described in the entry that it could have been easily and certainly found by using reasonable endeavors, or by inquiry of those who were conversant iri its vicinity. The land law requires that “ the party owning a land warrant shall direct the location thereof so specially and precisely as that others may be enabled, with certainty, to locate other warrants oh the adjacent residuum.”
This requisition is positive and unequivocal, and is indispensable to a valid entty. Literally taken, it requires such a description as will point oUt, With certainty, the quantity, situation and form of the land, at least to uncommon inteñti But the court considering that, froth the nature of the case, such a description cannot possibly be given, without cállingfor some object which, was well known to the greater number of those who were conversant in its Vicinity^ has uniformly adjudged that where the description contained in an entry is defective, if the immediate object called for, had the degree of notoriety which has been mentioned, that the obvious intention of that clause of the land law had been complied with ; and that this doctrine is a necessary deduction from it. , .
But it was urged by the counsel for the appellee, that the entry under which he claims, calls for the corners or lines of several surveys which had previously been made ; and although they were not Of record, and might have been abandoned by their owners, as being made contrary to entry, or altered by the surveyor so as to be moré conformable to law ; yet as they had been made by the officers of government, their notoriety ought to be presumed, until the contrary is proven : and moreover f that sufficient information might have been had from the deputy surveyors and their usual attendants. It might be observed, that as it is not certain, or even probable.; that the plats and certificates of atiy of those surveys had been returned to the surveyor’s office, it may be asked, how other persons could be informed who were the de *74 puties who made the surveys, and who were their attefl-dants? But if by accident this information had been obtained, as it is not shewn that any of the surveys had been made conformably to entry, is it certain that those persons could or would, after having left the ground, furnish such directions as Would lead others thereto ? It is however only necessary to state, that the land law does not expressly, or by implication, require subsequent locators to discover any thing which is not described in an entry, or well known in the vicinity ; and it would be highly unreasonable to make it necessary for the owner of a land warrant to travel into different parts of the country in quest of information to enable him to locate it certainty on Vacant land. There are some objects which might to be presumed to be generally known, without special proof that they are so ; but marked corners or lines are very far from being of that kind.
See Hart ms ■Btdlty,
It was also urged by the counsel for the appellee, that the cases Sinclair vs. Singleton (a), and Kennedy vs. Payne (b), this court has decided, that an entry which caps t0 ac;j0iu the pne Df a survey, is valid. As to the case Sinclair vs. Singleton, an interlocutory decree was pronounced, whilst the court had original jurisdiction ; and the exhibits therein were shortly afterwards, by authority of law, removed to the office of the clerk of one of the district courts, and this court has not the opportunity of examining how far that case is in point : but admitting it to be strictly so, it would be much more proper to disregard one decision, than to contravene a general principle which indubitably results from the land law, and the numerous decisions which have been founded thereon. And in the case Kennedy vs. Payne, no error was assigned to authorise the court to regard that circumstance.
It may not be improper to add, that there is a general principle, which prevails both at law and in chancery— every plaintiff or complainant must shew a good title or claim, before he can prevail in his suit; and in supporting an entry for land, the only apparent exception to this principle which occurs to the court, is, when an object which fits the call in an entry is shewn, the entry ought to be sustained, unless the opposite party can shew another object which does as well or better fit the call; and this depends on another general principle — that he who *75 holds the affirmative, must prove it: which seems to render the distinction between calls which prima facia appear to be goad, and any other calls in an entry, which are not insensible or.repugnant, of but little consequence.
But it is further urged by the counsel for the appellee, that generally the corners and lines of surveys, however old they may be, are not actually notorious ; and therefore that calls for them in entries, should not be brought to that test; but should be considered as having legal notoriety, or to be matters en pais. It is believed, that, generally, certificates of survey are destitute of such de-. scription as would constitute legal entries. But this only shews that where surveys are made contrary to entry, or on vague entries, and also lack both description and notoriety, calling for them in entries must be as fatal as calling to adjoin vague entries : and for the same reasons. It may be true, that grants obtained on such surveys, if the lands can be identified, will hold them against all entries made subsequent to their dates; because good policy demands that it should be so ; and the land, law does not authorise warrants to be located on lands held by legal titles ; and yet it will not follow, that entries which call to adjoin such lands do contain the re-. quisites of good entries, unless they had previously became notorious : and heilce it appears, that the distinction between the calls in entries, for surveys which had been made twelve months, three months, one month, or one day, is not material, unless that as they progress in age, perhaps they may more easily be discovered.
Decree reversed.*

 See Craig vs. Baker, poft, m which it :s decided that theobjeáU for, wuft be .notorious at the date of the entry calling for tfce.

(a) Hughes 92.

(b) Ante, 10.

 Seethe following cafes relative to the do&rine of entries calling for purveys : Tandy vs. Bledfoe, Pr. Dec.231, Robinfon vs. Morgan, Ibid 274, Moore vs. Whitledge and Reno, poft, Refpafs and Melton vs. Arnold, poft, Cartwright vs. Collier, poft, Ward and Kenton vs. Lee, affignee of Young, fall term 1808, Evans's heirs and others vs. Manfon’s ex'rs. fall term 1808, and' M'Nay's heirs vs. Gallaway, fall term 1809,
The fame point occurred in the cafes of Marfball vs. Kelley's heirs, and Cleland's heirs vs. Weaden's devifee, fall term 1808, and in the cafe of Payton vs. Goodlet, fpring term 1809 ; but it is more fully confidered in the other cafes cited.